J-A02012-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| KENNY SHYE MURPH | : | |
| | : | |
| Appellant | : | No. 721 MDA 2023 |

Appeal from the Judgment of Sentence Entered April 26, 2023
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s): CP-36-CR-0003567-2017

BEFORE: NICHOLS, J., KING, J., and SULLIVAN, J.

MEMORANDUM BY NICHOLS, J.: **FILED: MAY 29, 2024**

Appellant Kenny Shye Murph appeals from the judgment of sentence imposed following his conviction for possession of a firearm prohibited.[1] On appeal, Appellant challenges the sufficiency of the evidence and argues that the trial court erred in denying his motion for a mistrial. We affirm.

The trial court summarized the relevant facts and procedural history of this matter as follows:

> On July 5, 2017, Appellant was charged with, among other things, persons not to possess a firearm. A jury trial commenced on August 6, 2018. During the trial, Officer Isaac Witmer from the Lancaster City Bureau of Police testified that on the evening of July 5, 2017, he was on patrol with his partner Officer Schwebel in Lancaster City. At approximately 12:22 a.m., Officer Witmer and his partner pulled up to an intersection and noticed a red Jeep Cherokee with two occupants crossing the intersection in front of them. Officer Witmer testified that as the Jeep traveled in front of his cruiser, he noticed the two male occupants intently staring

---

[1] 18 Pa.C.S. § 6105(a)(1).

at the cruiser with wide eyes.  Based on his observation, Officer Witmer told his partner, who was driving the cruiser, to follow the Jeep.

As Officers Witmer and Schwebel continued to follow the Jeep, Officer Witmer noticed that the entire front windshield of the vehicle was cracked, stating that it appeared as spider glass. Officer Witmer testified that the condition of the windshield constituted a violation of the vehicle code and that, consequently, the Officers pulled the vehicle over.  After the Jeep was pulled over, Officer Witmer approached the passenger side of the vehicle and identified the passenger as Appellant . . . .

Officer Witmer testified that during his on-scene interaction with Appellant, he immediately noted that something appeared not right with him, specifically recalling that Appellant was breathing at a rate which was extremely un-normal for the situation, that his chest and abdomen were rising rapidly, that he was sweating extremely profusely, and that he had his arms covering . . . the center section of his body and was not moving them at all.  Officer Witmer noted that Appellant's behavior made him suspicious that something else was going on—that Appellant may have been armed.

Officer Witmer returned to his vehicle to verify the identification that Appellant had provided and found that both Appellant and the driver had suspended licenses and that neither individual was the registered owner of the vehicle.  The Officers then made the decision to remove both the driver and Appellant from the vehicle. While Officer Witmer was interacting with Appellant outside of the vehicle, another officer who had responded to the scene during the stop, Officer Thomas, noticed a gun under the passenger seat where Appellant had been sitting.  Officer Thomas notified Officer Witmer of the gun and Officer Witmer placed Appellant in the back of the police cruiser.

Officer Witmer then photographed the scene and collected the gun to place into evidence.  Appellant was taken to the police station and officers swabbed the inside of his mouth to take a DNA sample.  Lancaster City Evidence Specialist Drew Hollinger then processed the gun for DNA and fingerprints.  Although no fingerprints were located on the firearm, the DNA swabs taken from the weapon were sent to the Pennsylvania State Police lab for processing.

Sandra Newhart, a forensic DNA scientist from the Pennsylvania State Police lab, testified at trial and explained that when she compared the DNA found on the gun to Appellant's DNA, she found that the major component of the DNA taken from the gun matched Appellant's DNA profile. She explained that the probability of randomly selecting an unrelated individual exhibiting this specific DNA profile would be one in 640 septillion in the Caucasian population, one in 80 octillion in the African American population, and one in 35 nonillion in the Hispanic population.

Both the driver of the Jeep and the owner of the Jeep also testified at trial. Both disclaimed ownership and any awareness of the gun found under Appellant's seat. Both testified that they never owned a gun, never had a gun in the vehicle, and did not loan the vehicle out for other people to use.

On August 7, 2018, the jury found Appellant guilty of persons not to possess a firearm. . . .

Trial Ct. Op., 7/10/23, at 1-4 (citations, footnote, and quotation marks omitted and formatting altered).

On January 9, 2019, the trial court sentenced Appellant to a term of five to ten years of incarceration, with credit for time served from August 7, 2018 to August 13, 2018, and from January 6, 2019 to January 9, 2019. **See id.** at 4. Appellant subsequently filed a Post Conviction Relief Act[2] (PCRA) petition, and following an appeal to this Court,[3] the trial court resentenced Appellant to a term of five to ten years of incarceration with additional credit for time served. **See** Sentencing Order, 4/26/23, at 2.

_____

[2] **See** 42 Pa.C.S.§§ 9541-9546.

[3] **See Commonwealth v. Murph**, 246 MDA 2022, 2022 WL 17410603 (Pa. Super. filed Dec. 5, 2022) (unpublished memorandum) (remanding for resentencing); **see also** Trial Ct. Op., at 4-7 (explaining the post-sentence, PCRA, and appellate procedural history).

Appellant filed the instant timely appeal from the April 26, 2023 judgment of sentence. Both the trial court and Appellant complied with Pa.R.A.P. 1925.

On appeal, Appellant presents the following issues, we have renumbered as follows:

1. The Commonwealth established [Appellant's] possession of a gun by proving that he could not be excluded as a contributor to a mixture of DNA on it. But the arresting officer collected the gun after patting [Appellant] down, handcuffing him, and searching him incident to arrest. Does insufficient evidence support his conviction for illegally possessing a firearm?

2. Did the trial court abuse its discretion when it denied trial counsel's motion for a mistrial after the arresting officer told the jury that [Appellant] was on probation at the time of his arrest?

Appellant's Brief at 4 (formatting altered).[4]

**Sufficiency of the Evidence**

In his first claim, Appellant argues that his DNA was only found on the firearm because the arresting officer made physical contact with Appellant and then touched the firearm. *See id.* at 16-17. Appellant contends that this alleged DNA transfer is a "reasonable probability" because Officer Witmer did not specifically record whether he put gloves on before he retrieved the firearm. *Id.* (citing N.T. Trial, 8/6/18, at 145). On this basis, Appellant contends that the evidence supporting his conviction for possession of a

---

[4] We will address the issues in the same order Appellant presented them in his Rule 1925(b) statement and as addressed in the trial court's opinion.

firearm prohibited was too weak and inconclusive to prove his guilt. *See id.* at 17-18.

The Commonwealth responds that the DNA was not the only evidence supporting Appellant's conviction. Commonwealth's Brief at 7-8. Specifically, the Commonwealth notes that in addition to the DNA on the firearm, there was also evidence of constructive possession including evidence that Appellant's behavior during the traffic stop led the officers to believe that he may be armed, the gun was found under Appellant's seat in the car, and there was testimony that it was unlikely that the gun would have been under the seat while the car was in motion. *See id.* at 8. The Commonwealth also asserts that neither the owner nor driver of the car had any knowledge of the firearm discovered under Appellant's seat. *See id.* at 9. Moreover, in response to Appellant's argument regarding alleged DNA transfer, the Commonwealth notes that officer who retrieved the firearm testified that he put on latex gloves before touching the gun and placed it in an evidence bag. *See id.* at 8-9.

Our standard of review is as follows:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and

inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proof of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all the evidence actually received must be considered. Finally, the trier of fact while passing on the credibility of witnesses and the weight of the evidence produced, is free to believe all, part[,] or none of the evidence.

*Commonwealth v. Bragg*, 133 A.3d 328, 330-31 (Pa. Super. 2016) (citation omitted). Because a sufficiency of the evidence challenge raises a question of law, our standard of review is *de novo*, and our scope of review is plenary. *Commonwealth v. Mikitiuk*, 213 A.3d 290, 300 (Pa. Super. 2019).

The crime of possession of a firearm prohibited is defined, in relevant part, as follows:

**(a) Offense defined.—**

(1) A person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth.

18 Pa.C.S. § 6105(a)(1).

The Commonwealth may meet its burden by proving constructive possession of contraband beyond a reasonable doubt and may do so using circumstantial evidence of a defendant's possession of the item at issue. *Commonwealth v. Bowens*, 265 A.3d 730, 740-41 (Pa. Super. 2021) (*en*

*banc*), *appeal denied*, 279 A.3d 508 (Pa. 2022). This Court has defined

constructive possession as follows:

> Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as conscious dominion. We subsequently defined conscious dominion as the power to control the contraband and the intent to exercise that control. To aid application, we have held that constructive possession may be established by the totality of the circumstances.

*Commonwealth v. Hopkins*, 67 A.3d 817, 820 (Pa. Super. 2013) (citation

omitted). "The evidence must show a nexus between the accused and the

item sufficient to infer that the accused had the power and intent to exercise

dominion and control over it." *Commonwealth v. Peters*, 218 A.3d 1206,

1209 (Pa. 2019) (citation omitted). "Dominion and control means the

defendant had the ability to reduce the item to actual possession immediately

or was otherwise able to govern its use or disposition as if in physical

possession." *Id.* (citations omitted).

Here, at trial, Officer Witmer conceded that his written report did not

indicate whether he wore latex gloves. *See* N.T. Trial, 8/6/18, at 145.

However, Officer Witmer specifically testified that he did, in fact, put on latex

gloves before physically contacting the firearm. *See* N.T. Trial, 8/6/18, at

116, 145. Specifically, Officer Witmer explained:

> So for collecting the gun, we always never touch them with our hands. So I put gloves on I put latex gloves on that we normally use to process drugs or guns, any type of evidence that we don't want to transfer any fingerprints or our own DNA to. I picked the

gun up at that point, placed it into — we have evidence bags with us. I just placed it in a paper bag after it was photographed.

*Id.* at 116. Further when asked on cross-examination if he wore gloves when he picked up the gun, Officer Witmer responded: "Yes I would not touch a gun that was held in a crime without gloves on." *Id.* at 145. Additionally, on redirect examination, when asked directly whether he wore gloves when picking up the firearm in this case, the officer stated: "I absolutely did." *Id.* at 152.

Further, the trial court concluded:

Instantly, contrary to Appellant's assertion, the Commonwealth presented substantial evidence to show he both actually and constructively possessed the firearm found beneath his seat. Although no fingerprints were found on the weapon, DNA swabbed from the gun overwhelmingly matched Appellant's profile. The forensic DNA scientist who testified at trial explained that the probability selecting an unrelated individual exhibiting the specific DNA profile found on the weapon would be one in 640 septillion in the Caucasian population, one in 80 octillion in the African American population, and one in 35 nonillion in the Hispanic population. Unquestionably, this evidence establishes a direct physical link between Appellant and the weapon and was sufficient to support the jury's finding that [Appellant] actually possessed the firearm. *See* [*Commonwealth v.*] *Gomez*, 224 A.3d [1095, 1101 (Pa. Super. 2019)] (concluding that a defendant's DNA on a firearm revealed that the defendant had "physical possession of the [weapon] at some point, thus exerting actual control over the weapon").

The evidence presented at trial also established that Appellant had the power to control the contraband and the intent to exercise that control. The weapon—which DNA established Appellant had handled at some point prior to the vehicle stop—was found in the vehicle directly underneath where Appellant was seated and was within his reach. *See Commonwealth v. Hopkins*, 67 A.3d 817, 821 (Pa. Super. 2013) (concluding that sufficient evidence had been presented to show constructive possession where the

firearm was visible from where the defendant was sitting and was within his arms-length reach). For these reasons, the evidence presented at trial was sufficient to show [] Appellant possessed the firearm. Appellant's claim of error is, therefore, without merit.

Trial Ct. Op., at 9-10.

Following our review of the record, and in viewing the evidence in the light most favorable to the Commonwealth as verdict winner, we conclude that there was sufficient evidence to support Appellant's conviction. *See Bragg*, 133 A.3d at 330-31. The Commonwealth presented evidence establishing that Appellant's behavior led the officer to believe he may be armed, the firearm was found under Appellant's seat in the car, both the driver and the owner of the car denied ownership of the gun, and the Commonwealth found Appellant's DNA on the firearm. *See* N.T. Trial, 8/6/18, at 107-08, 163; N.T. Trial, 8/7/18, at 188-89. Further, the jury was free to believe Officer Witmer's testimony that he put on a pair of latex gloves before he touched the firearm, which prevented a transfer of Appellant's DNA. *See Bragg*, 133 A.3d 330-31. On this record, we cannot conclude that the Commonwealth's evidence was "so weak and inconclusive that[,] as a matter of law[,] no probability of fact [can] be drawn from the combined circumstances." *See id*. at 330 (citation omitted). Therefore, Appellant is not entitled to relief.

**Motion for Mistrial**

Appellant also argues that the trial court abused its discretion when it denied his motion for a mistrial. Appellant's Brief at 11. Appellant contends that his trial counsel asked Officer Witmer about a consent-to-search form,

and in the "officer's ostensible attempt to answer a simple question, he gave a list of things he did before he discussed the form with [Appellant] and then blurted out that [Appellant] was on probation." *Id.* at 13 (citing N.T. Trial, 8/6/18, at 148). Appellant concludes that the trial court's instructions to the jury did not cure the prejudice. *Id.* at 14-15.

The Commonwealth responds that the trial court did not abuse its discretion in denying Appellant's motion for a mistrial. *See* Commonwealth's Brief at 9. The Commonwealth contends that when Appellant's trial counsel was cross-examining Officer Witmer concerning when the police obtained Appellant's consent for a buccal swab at the Lancaster County Prison, Officer Witmer testified that many things were going on at that moment, and the officer mentioned that Appellant was on probation at that time. *See id.* at 10. The Commonwealth asserts that Officer Witmer's statement was a passing reference, and the statement did not deprive Appellant of a fair and impartial trial. *See id.* at 9-10.

When reviewing a trial court's denial of a motion for a mistrial, we are guided by the following standards:

> We review a trial court's denial of a motion for a mistrial for an abuse of discretion. A mistrial is an extreme remedy that is appropriate only where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict. It is within the trial court's discretion to determine whether a defendant was prejudiced by the incident that is the basis of a motion for a mistrial. When a trial court gives adequate cautionary instructions to the jury, it is not necessary

for the court to declare a mistrial. The law presumes that the jury will follow the instructions of the court.

***Commonwealth v. Leap***, 222 A.3d 386, 392 (Pa. Super. 2019) (citations omitted and formatting altered). Further, "[w]hen the statement at issue relates to a reference to past criminal behavior, the nature of the reference and whether the remark was intentionally elicited by the Commonwealth are considerations relevant to the determination of whether a mistrial is required."

***Commonwealth v. Parker***, 957 A.2d 311, 319 (Pa. Super. 2008) (citation omitted and formatting altered). "A singular, passing reference to prior criminal activity is usually not sufficient to show that the trial court abused its discretion in denying the defendant's motion for a mistrial." ***Id.*** (citation omitted and formatting altered).

Here, during trial counsel's cross-examination of Officer Witmer, the following exchange occurred:

[Trial Counsel:] Do you recall when it is this form was gone over?

[Officer Witmer:] It is later I packaged the evidence. I went down to talk to [Appellant]. I went down and I told him, hey, is this something I am going to want to do. I want a buccal swab from you. I'm either going to get it this way or get a search warrant. I'm going to get it from you via search warrant. Think about it. I'll be back down a little bit. Let me know what you think. I'll bring the consent form that you can read and look over before we take the DNA swab. I went back down later. During this time, we were contacting — there were many things going on. [Appellant] was on probation at the time. We had —

[Trial Counsel:] Your Honor —

[Trial Counsel:] I will take that back. Thank you. This was signed after you had filled out the property inventory receipt?

[Officer Witmer:] That would be the last. The buccal swab would have been — it all would have been submitted as a unit at this time. It was written on the card. The buccal swab would have been submitted later, to the best of my recollection.

[Trial Counsel:] Again, that was after you had put the gun into evidence?

[Officer Witmer:] I believe so?

[Trial Counsel:] May we have a sidebar?

N.T. Trial, 8/6/18, at 148 (formatting altered).

In its Rule 1925(a) opinion, the trial court further explained:

During Officer Witmer's cross-examination, he mentioned in passing that Appellant was on probation at the time of his arrest.

Appellant's trial counsel promptly requested a sidebar, where the following exchange occurred:

[Trial Counsel:] Your Honor, at this point, I would like to ask for a mistrial based on [Officer Witmer's] statement that [Appellant] was on probation at the time. . . . Probably a little gratuitous, not responsive, I would ask for a mistrial.

Commonwealth: He is being responsive. In fact, he's trying to be careful with what he is. [Trial Counsel] keeps pushing on what [the officer] did and when. There are things I instructed [the officer] not to say, which is why he is having a difficult time, and some of these questions are the result of that. When [Trial Counsel is] asking why [the officer] took so long to do this, he is dealing with a number of people. He is trying to do the best he can.

The Court: Out of curiosity, is supervision related to the underlying charge?

Commonwealth: Correct.

The Court: So, in part, [Trial Counsel] opened the door to that. I don't think it's prejudicial. It's relating to the crime that the jury is going to know about anyway. It will be told in the charge a couple of times that it can't be used against him. It's simply an element of the crime.

[Trial Counsel:] Okay.

(N.T. Jury Trial, [8/6/18,] at 148-49). Later in the trial, the Commonwealth entered into evidence the certified conviction that served as the basis of the persons not to possess charge for which Appellant was on trial—and for which Appellant had been serving the term of probation that Officer Witmer mentioned during his cross-examination. (N.T. Jury Trial, [8/7/18,] at 197-99).

During my final instructions to the jury, I stated:

> [Appellant] has been charged with persons not to possess or control a firearm. To find [him] guilty of that offense, you must find that the following two elements have been proven beyond a reasonable doubt. First, that [Appellant] was a person prohibited by law from possessing or controlling a firearm. To be prohibited, the Commonwealth must show that [Appellant] at the time of this conduct had previously been convicted of the crime of robbery. In this case, the Commonwealth introduced testimony that [Appellant] had been convicted of the offense of robbery on May 18, 2013. This evidence is to be used for, but only for, determining whether [Appellant] was a person prohibited by law from possessing or controlling a firearm, the charge for which he now stands trial.

> You are not to consider this prior conviction as evidence of his propensity to commit a crime or for any other reason. To do so would be a violation of your oaths as jurors.

(N.T. Jury Trial, [8/7/18,] at 241-42).

In a persons not to possess firearms case, a defendant does not "suffer[] unfair prejudice merely by the admission into evidence of his or her certified conviction of a specific, identified, predicate offense, which has been offered by the Commonwealth to prove the prior conviction element["] of the offense. ***Commonwealth v. Jemison***, 98 A.3d 1254, 1262 (Pa. 2014). "Any possibility of unfair prejudice is greatly mitigated by the use of proper cautionary instructions to the jury, directing them to consider the defendant's prior offense only as evidence to establish the prior conviction element of the [persons not to possess] charge, not as evidence of the defendant's bad character or propensity to commit crime." ***Id.*** Further, "[r]eferences during trial to [a] defendant's unrelated criminal acts may be grounds for a new trial; however, where they are mere passing references and the court issues a

- 13 -

cautionary instruction to the jury, a mistrial will not be granted."
***Commonwealth v. Johnson***, 459 A.2d 5, 10 (Pa. Super. 1983).

Instantly, at the sidebar reproduced above, the Commonwealth clarified that the term of probation that Officer Witmer mentioned was, in fact, related to the conviction that served as the basis of the persons not to possess charge for which Appellant was on trial. The jury was thereafter presented with a certified copy of that conviction and, as required by Pennsylvania law, [the trial court] gave a detailed cautionary instruction regarding the proper use of the prior offense. To the extent that the jury may not have understood that the term of probation that Officer Witmer mentioned was being served for the specific, identified, predicate offense, Officer Witmer's reference was merely in passing and my cautionary instruction remedied any need for a mistrial. Accordingly, Appellant's argument that [the trial court] erred in refusing to grant trial counsel's motion for a mistrial must fail.

Trial Ct. Op., at 10-13 (some formatting altered).

Following our review of the record, we discern no abuse of discretion in by the trial court. ***See Leap***, 222 A.3d at 392. Although Officer Witmer mentioned that Appellant was on probation during cross-examination, ***see*** N.T. Trial, 8/6/18, at 148, it is clear that Officer Witmer's statement about probation was not intentionally elicited by the Commonwealth nor was its unavoidable effect to deprive Appellant of a fair trial. ***See Leap***, 222 A.3d at 392; ***Parker***, 957 A.2d at 319. Further, because a prior conviction is an element of persons not to possess firearms, the trial court provided a cautionary instruction to the jury concerning the extent to which the jury was permitted to consider the prior offense. On this record, we agree with the trial court that Officer Witmer's single, passing reference to probation did not warrant a mistrial. ***See Leap***, 222 A.3d at 392; ***Parker***, 957 A.2d at 319.

- 14 -

Therefore, we conclude that Appellant is not entitled to relief.  Accordingly, we affirm.

Judgment of sentence affirmed.  Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 05/29/2024